UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11472 DPW

|  |  |
|---|---|
| JAMI LANSER and STEVEN HIGGINS, PPA C. HIGGINS<br><br>Plaintiffs,<br><br>v.<br><br>H.N. HINCKLEY & SONS, INC., d/b/a HINCKLEY LUMBER And SHAWN M. WILLOUGHBY, JR.<br><br>Defendants, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

**PRELIMINARY STATEMENT**

1.      This is an action by Jami Lanser and Steven Higgins, as parents and next best friends of C.H.[1], a minor child (collectively the "Plaintiffs") against H.N. Hinckley & Sons, Inc., d/b/a Hinckley Lumber ("Hinckley Lumber") and Shawn M. Willoughby, Jr. ("Willoughby"), (collectively the "Defendants") arising out of injuries C.H. suffered on July 15, 2002 when he was struck by a vehicle owned by Hinckley Lumber and driven by Willoughby on Beach Road in Edgartown, Massachusetts.  The Plaintiffs assert claims against each of the Defendants based on negligence (Counts I though V).

**PARTIES**

2.      C.H. is a minor child, with a residence located in Phoenix, Arizona.

---

[1] Pursuant to L.R., D. Mass  5 3 (A)(2) regarding the identification of the names of minor children, the minor child in this matter shall be identified by the initials "C.H."

3.     The Plaintiff, Jami Lanser is an individual, with a residence located in Phoenix, Arizona. Ms. Lanser is the mother of C.H.

4.     The Plaintiff, Steven Higgins is an individual, with a residence located in Phoenix, Arizona. Mr. Higgins is the father of C.H.

5.     The Defendant, H.N. Hinckley & Sons, Inc. d/b/a Hinckley Lumber ("Hinckley Lumber"), is a Massachusetts corporation with a principal place of business located at 27 Beach Road, Vineyard Haven, Massachusetts.

6.     The Defendant, Shawn M. Willoughby, Jr. ("Willoughby") is an individual, with a residence located, upon information and belief, at 33 Summer Street, Tisbury, Massachusetts.

## JURISDICTION AND VENUE

7.     The United States District Court for the District of Massachusetts has jurisdiction over this action, pursuant to 28 U.S.C. § 1332, in that the Plaintiffs and Defendants are residents of different states and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00).

8.     Venue is appropriate in this District, pursuant to 28 U.S.C. § 1391(a), in that it is the district in which the Defendants reside and in which a substantial part of the Plaintiffs' claims arose.

## FACTUAL STATEMENT

9.     In July 2002, Steven Higgins traveled from Phoenix, Arizona to vacation on Cape Cod, Massachusetts with his son, eight-year old C.H., and C.H.'s six-year old sister. The children's mother, Jami Lanser, remained in Arizona while Steven and the children vacationed.[2]

---

[2] Steven and Jami divorced in June 1998.

2

On July 15, 2002, Steven and the children, along with Steven's brother, Michael, took a day trip by ferry from Woods Hole to Martha's Vineyard.

10.    When Steven, Michael, and the children reached the island, they rented bicycles for the day in Oak Bluffs. At the rental shop, C.H. was fitted for a two-wheel mountain bike similar in style and size to his own bicycle.[3]  C.H. was also fitted for a bicycle helmet at the rental shop that he wore at all times while riding the bicycle. The family then rode their bicycles from Oak Bluffs to Edgartown.

11.    At approximately 2:30 P.M., Steven, Michael, and the children began the ride back to Oak Bluffs via Beach Road to return the bicycles to the rental shop and to catch the late afternoon ferry to Woods Hole. As they left Edgartown, Michael Higgins rode alongside C.H., and Steven rode with C.H.'s sister. C.H. and Michael rode at a faster pace and gradually pulled away from the others, ultimately leading them by several minutes. When C.H. and Michael reached Beach Road on the approach to Oak Bluffs, the automobile traffic was heavy and moving slowly in both directions. C.H. and Michael headed northbound on Beach Road riding in the paved bicycle path running parallel to and directly adjacent to the southbound lane of automobile traffic. A six to eight foot wide grass median separated the bike path from the roadway.

12.    C.H. and Michael rode next to each other on the bike path, with Michael riding slightly ahead. At approximately 2:50 P.M., C.H. and Michael approached the driveway for a shopping center parking lot that intersected with the bike path and Beach Road. Although a number of other cyclists were riding on the path, none were stopped at the intersection of the driveway and there were no obstructions in the bike lane in C.H. and Michael's path. In

---

[3] By July 2002, C.H. had been riding a two-wheel bicycle for approximately two years

addition, there were no signs indicating that cyclists should stop at the driveway intersection. As

C.H. and Michael approached, a line of cars heading southbound on Beach Road had stopped in

traffic just prior to the driveway intersection, however no cars were entering or leaving the

parking lot. In order to reach the parking lot, a vehicle turning into the driveway would

necessarily have to cross over the bike path.

       13.    As C.H. and Michael approached the intersection to the parking lot, Willoughby

was heading northbound on Beach Road, driving a Ford F550 flatbed truck (the "Vehicle")

owned by Willoughby's employer, Hinckley Lumber. The Hinckley Lumber Vehicle had two

axles with dual rear tires and carried a small load of lumber on the bed. As he drove on Beach

Road, Willoughby intended to make a left turn into the shopping center parking lot, cutting

across the southbound lane of automobile traffic and the bike path.

       14.    Willoughby, by his own account, saw C.H. and Michael riding on the bike path

adjacent to Beach Road as he approached the driveway intersection. (See July 15, 2002 Report

of Edgartown Police Department, attached hereto as Exhibit A). Despite seeing the cyclists,

Willoughby admitted that prior to cutting across the bike path, he did not make any effort to

determine whether C.H. and Michael had stopped at the driveway intersection to allow him to

safely turn into the parking lot.

       15.    When an opening in the line of traffic appeared, Willoughby darted the Vehicle

across the southbound lane, making a left hand turn across Beach Road, directly into Michael

and C.H.'s path. As Willoughby turned, Michael and C.H. were only a few feet from the

intersection of the bike path and the driveway. Michael, riding slightly ahead of C.H., slammed

on his brakes to avoid being hit by the turning truck, which had now crossed into the bike path.

Michael swerved to the left and fell from his bike, landing at the edge of the driveway.

4

16.    As Michael fell from his bicycle, he looked over and saw C.H. attempt to stop his bicycle using the kick brake. C.H. yelled out and tried to swerve out of the way of the Vehicle. Despite C.H.'s efforts, the left rear wheels of the Hinckley Lumber Vehicle struck C.H. and knocked him to the ground underneath the truck. As the truck continued forward, the two left rear wheels of the Vehicle ran over C.H.'s body, with the tires of the truck crossing directly over C.H.'s abdomen.

17.    Willoughby continued forward in the Vehicle for a few more feet into the driveway before coming to a stop. Michael immediately ran over to help C.H. Several witnesses to the accident also quickly came to C.H.'s aid. C.H. lay in the road with the bicycle next to him, the frame of which had been bent by the impact with the truck's wheels. When Michael approached him, C.H. complained of abdominal pain and he had a deep laceration on his left leg that was bleeding profusely. One of the witnesses to the accident, Lorraine King, stated that she was a nurse and she helped stabilize C.H. while others used a blanket to apply pressure to the gash on C.H.'s leg. Another woman who witnessed the accident called 911 and the police arrived on the scene within several minutes.

18.    After the accident, Willoughby got out of the Vehicle and paced around the accident scene. When the police arrived, Officer James Craig questioned Willoughby regarding the accident. Willoughby claimed (falsely) that before making the turn he saw other vehicles enter and exit the parking lot. Willoughby stated to Officer Craig that when he saw C.H. and Michael riding on the bike path approaching the intersection of the driveway, he "assumed" that they would stop before crossing the driveway. (See Exhibit A, Report of Edgartown Police Department, page 4). However, Willoughby admitted that he did not actually see C.H. and

5

Michael stop at the intersection before making the turn. Willoughby further stated that when he drove across the bike path he "felt his truck driving over something."

19.     When advised by Officer Craig that he was required to make certain that it was safe to cross the Vehicle over the bike path before making the turn, Willoughby repeatedly stated that he "could not believe" that C.H. and Michael would not stop when they saw him. Officer Craig then informed Willoughby that he would be issued a citation at the conclusion of Officer Craig's investigation of the accident.

20.     Officer Craig later spoke with Michael Higgins and Ms. King who informed him, contrary to Willoughby's claim, that they did not observe any cars entering or exiting the parking lot prior to Willoughby. On July 16, 2002, Officer Craig issued a citation to Willoughby in connection with the accident. On August 6, 2002, the citation entered as a criminal complaint in the Edgartown District Court charging Willoughby with: (a) negligent operation of a motor vehicle in violation of M.G.L. c. 90, § 24(2)(a); (b) failure to slow for a pedestrian in violation of M.G.L. c. 90, § 14; and (c) failure to yield at an intersection in violation of M.G.L. c. 89, § 8. (See Edgartown District Court, Criminal Complaint, Docket No. 0235CR00823, attached hereto as Exhibit B).

21.     On December 5, 2003, Willoughby pleaded guilty to the charge of negligent operation of a motor vehicle and received a sentence of two years probation, with the court ordering him to wear a monitoring ankle bracelet. (See Edgartown District Court, Criminal Docket, Docket No. 0235CR00823, attached hereto as Exhibit C). On March 12, 2004, the court found Willoughby to be in violation of his probation and ordered him to serve the balance of his sentence of two years in prison.

6

22.    Upon information and belief, prior to being hired by Hinckley Lumber, Willoughby had committed several motor vehicle infractions, including offenses for failing to obey a police officer, operating a vehicle without a license, and operating a vehicle without the owner's authority. As a result of these infractions, Willoughby's driver's license was suspended for a period of one and a half years. Despite his poor driving record, Hinckley Lumber hired Willoughby and entrusted the Vehicle to him to drive in connection with his employment.

23.    C.H. sustained serious injuries as a result of the accident. Initially, C.H. was transported by ambulance to Martha's Vineyard Hospital. However, the doctors there concluded that C.H.'s injuries were of such a severe nature that he should be transported to Children's Hospital in Boston. Accordingly, C.H. was flown by helicopter to Children's Hospital where he was admitted to the intensive care unit. Steven Higgins accompanied C.H. in the helicopter ride while Michael took C.H.'s sister back to Woods Hole on the ferry.

24.    As a result of the accident, C.H. sustained the following injuries: 1) grade III-IV liver laceration, 2) duodenal hematoma, 3) pancreatic contusion, 4) right adrenal contusion, 5) non-displaced fracture of the pelvis, 6) hairline fracture of the right femur, and 7) five centimeter long, one centimeter deep laceration to left leg requiring twelve sutures. (See Children's Hospital Discharge summary, attached hereto as Exhibit D).

25.    C.H. spent a total of four days at Children's Hospital being treated for his injuries. On July 19, 2002, C.H.'s doctors determined that he could travel back to Arizona. Upon returning home, C.H. spent a two week period largely confined to his bed, moving only with the aid of crutches. C.H. received follow-up care with his pediatrician in Arizona and had the sutures removed from the gash in his leg. C.H.'s doctors in Arizona ultimately cleared him to resume his activity level. However, for a period of several months, C.H. was unable to engage in

7

his usual activities, in particular sports and other outdoor interests that he enjoyed prior to the accident.

26.     In the three years since the accident, C.H. has continued to suffer abdominal pain and discomfort that he did not experience prior to the accident. Accordingly, C.H.'s doctors continue to monitor and treat his condition.

27.     In addition, despite the three years since the accident, the scar from the laceration on C.H.'s left leg remains quite noticeable and painful to touch and will likely require plastic surgery in the future. C.H.'s medical bills in connection with the injuries he sustained in the accident to date total approximately $50,000.00.

28.     The trauma of the accident also affected C.H. psychologically. C.H. remained conscious after the accident and was awake for many of the medical procedures that followed, including being immobilized on a spine board. For months afterward, C.H. suffered from nightmares associated with the accident. C.H. remembered the accident in vivid detail and would mention it repeatedly. C.H. continues to be extremely fearful of cars and trucks. He often becomes anxious when riding in a car or walking through parking lots and is particularly fearful of crossing the street.

29.     In addition, C.H.'s parents suffered severe emotional distress as a result of the accident. Steven and Jami endured every parent's "worst nightmare" of learning that their child had been hurt in a serious accident. Steven witnessed his eight year old son being intubated, immobilized on a stretcher, and airlifted to a hospital. Jami was required to fly across the country in order to be with C.H. at the hospital. Steven and Jami spent several hours unaware of the severity or extent of C.H.'s injuries and whether his life was in danger. After C.H.'s hospitalization, Steven and Jami nurtured C.H. through his rehabilitation and reassured him

8

when he experienced nightmares about the accident. Both parents spent a significant amount of time taking C.H. to doctor's appointments. Steven and Jami experienced further anxiety and distress due to their concerns about the physical and psychological effects the accident had on C.H.

### COUNT I
### (Negligence - Shawn Willoughby)

30.     The Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs as if they were fully set forth herein.

31.     Willoughby was negligent in his operation of the Vehicle owned by Hinckley Lumber.

32.     As a direct and proximate result of Willoughby's negligence, C.H. has suffered severe and permanent personal injuries, suffered great pain of body and anguish of mind, suffered a loss of earnings and impairment of earning capacity, and incurred great expense for medical care and treatment, all in amounts to be determined at trial.

### COUNT II
### (Negligence - Hinckley Lumber)

33.     The Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs as if they were fully set forth herein.

34.     Willoughby operated the Vehicle in the course of his employment with Hinckley Lumber. As Willoughby's employer and the registered owner of the Vehicle, Hinckley Lumber is liable for Willoughby's negligent operation of the Vehicle.

35.     As a direct and proximate result of the Defendants' negligence, C.H.

has suffered severe and permanent personal injuries, suffered great pain of body and anguish of mind, suffered a loss of earnings and impairment of earning capacity, and incurred great expense for medical care and treatment, all in amounts to be determined at trial.

**COUNT III**
**(Negligent Hiring – Hinckley Lumber)**

36.     The Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs as if they were fully set forth herein.

37.     Hinckley Lumber hired Willoughby and allowed him to operate the Vehicle despite the fact that Willoughby possessed an unsatisfactory driving record and was incompetent to operate the Vehicle in a safe manner.  Accordingly, Hinckley Lumber was negligent in its hiring and employment of Willoughby.

38.     As a direct and proximate result of Hinckley Lumber's negligence, C.H. has suffered severe and permanent personal injuries, suffered great pain of body and anguish of mind, suffered a loss of earnings and impairment of earning capacity, and incurred great expense for medical care and treatment, all in amounts to be determined at trial.

**COUNT IV**
**(Loss of Consortium – Jami Lanser)**

39.     The Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs as if they were fully set forth herein.

40.     As a result of the Defendants' negligence, C.H. suffered severe and permanent personal injuries, suffered great pain of body and anguish of mind.

41.     As a result of the Defendants' negligence, Jami Lanser was caused to suffer the loss of consortium, care and services provided by her son, C.H.

## COUNT V
### (Loss of Consortium – Steven Higgins)

42.     The Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs as if they were fully set forth herein.

43.     As a result of the Defendants' negligence C.H. suffered severe and permanent personal injuries, suffered great pain of body and anguish of mind.

44.     As a result of the Defendants' negligence, Steven Higgins was caused to suffer the loss of consortium, care and services provided by his son, C.H.

WHEREFORE, the Plaintiffs request that this court:

1.     After trial enter a judgment against the Defendants and award the Plaintiffs their actual damages suffered as a result of the unlawful conduct of the Defendants;

2.     Enter such other and further orders and grant such other relief as it deems just.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL APPLICABLE CLAIMS**

JAMI LANSER and STEVEN
HIGGINS, PPA C. HIGGINS
By Their Attorneys,

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand.

Date: 8/31/05

Peter J. Pingitore BBO# 547333
John R. Chayrigues BBO#637505
Pingitore & Associates, LLC
Three Center Plaza, Suite 210
Boston, Massachusetts 02108
(617) 367-0990

11



**EDGARTOWN**
**POLICE DEPARTMENT**
**72 PEASE'S POINT WAY SOUTH**
**EDGARTOWN MA  02539-1118**
**508-627-4343  Fax 508-627-4577**
Complete Case Report

| Case Nbr | Related Nbr | Report Title | | |
|---|---|---|---|---|
| 2002-02006 | | MOTOR VEHICLE ACCIDENT | | |
| Incident Address | | | | Intersection No |
| BEACH ROAD, EDGARTOWN | | | | Block No |
| | | | X Street | |

| Business/Loc | Suite | Floor | Building | Location Detail |
|---|---|---|---|---|
| | | | | JUST UP FROM TRIANGLE |
| Date/Time From | Reported On | | | Case Status |
| | 07/15/2002 14:53 | | | SUMMONS |
| Date/Time To | Assigned On | | | Status As Of |
| | 07/15/2002 | | | |
| Reporting Officer | Dom. Violence | No | | |
| CRAIG, JAMES | Sr. Cit. Involved | No | | |
| Copies To | | | | |

**Synopsis**

860 reports a child having been run over by a truck.

**Crimes/Incidents**

Code Section
Description      MV vs. Bicycle Accident
Classification   ACCIDENTS:  MOTOR VEHICLE
Loss             0.00
Recovery         0.00

COPY

| COMPLAINANT | Race | Sex | Age | DOB | Ht | Wt | Hair | Eyes |
|---|---|---|---|---|---|---|---|---|
| GRANT, MARTHA | | | | | 0 0 | 0 | | |
| DL Nbr/ST | AKA | | | Type | | | | |
| Home Address | | | | | | Home Phone | | |
| , MA | | | | | | 781-883-0331 | | |
| Business Address | | | | | | Business Phone | | |

| Vehicle Yr | Make | Model | Color | Lic. Plate Nbr, ST | Type |
|---|---|---|---|---|---|
| Vehicle VIN | | | | | |

| Reporting Officer | | Reviewed By |
|---|---|---|
| 115 CRAIG | Page 1 of 5 | |
| Reporting Officer's Signature | | Reviewed On |



# EDGARTOWN
## POLICE DEPARTMENT
### 72 PEASE'S POINT WAY SOUTH
### EDGARTOWN MA  02539-1118
### 508-627-4343  Fax 508-627-4577
### Complete Case Report

| VICTIM | | Race | Sex | Age | DOB | | Ht | Wt | Hair | Eyes |
|---|---|---|---|---|---|---|---|---|---|---|
| HIGGINS, C▬▬▬ | | White | M | 8 | ▬▬▬1994 | | 0  0 | 0 | | |
| DL Nbr/ST | AKA | | | | Type | | | | | |

| Home Address | | Home Phone |
|---|---|---|
| 3307 E. MEDLOCK DRIVE      PHOENIX, AZ 85018 | | 602-451-2727 |
| Business Address | | Business Phone |

| Vehicle Yr | Make | Model | Color | Lic. Plate Nbr, ST | Type |
|---|---|---|---|---|---|
| Vehicle VIN | | | | | |

---

| WITNESS | | Race | Sex | Age | DOB | | Ht | Wt | Hair | Eyes |
|---|---|---|---|---|---|---|---|---|---|---|
| KING, LORRAIN | | White | F | | ▬▬/1961 | | 0  0 | 0 | | |
| DL Nbr/ST | AKA | | | | Type | | | | | |

| Home Address | | Home Phone |
|---|---|---|
| 4 JOEVIERRA ROAD      WEST TISBURY, MA 02575 | | 508-696-4821 |
| Business Address | | Business Phone |

| Vehicle Yr | Make | Model | Color | Lic. Plate Nbr, ST | Type |
|---|---|---|---|---|---|
| Vehicle VIN | | | | | |

---

| WITNESS | | Race | Sex | Age | DOB | | Ht | Wt | Hair | Eyes |
|---|---|---|---|---|---|---|---|---|---|---|
| HIGGINS, MICHAEL | | White | M | | ▬▬▬1964 | | 0  0 | 0 | | |
| DL Nbr/ST | AKA | | | | Type | | | | | |

| Home Address | | Home Phone |
|---|---|---|
| 21 MARGARET STREET    APT. 3   BOSTON, MA 02114 | | 617-723-2798 |
| Business Address | | Business Phone |

| Vehicle Yr | Make | Model | Color | Lic. Plate Nbr, ST | Type |
|---|---|---|---|---|---|
| Vehicle VIN | | | | | |

---

| Reporting Officer | | Reviewed By |
|---|---|---|
| 115 CRAIG, | | |
| Reporting Officer's Signature | Page 2 of 5 | Reviewed On |



# EDGARTOWN
## POLICE DEPARTMENT
**72 PEASE'S POINT WAY SOUTH**
**EDGARTOWN MA 02539-1118**
**508-627-4343 Fax 508-627-4577**
Complete Case Report

| OTHER | | Race | Sex | Age | DOB | | Ht | Wt | Hair | Eyes |
|---|---|---|---|---|---|---|---|---|---|---|
| HIGGINS, STEVEN B | | White | M | | ▓▓1966 | | 0 | 0 | 0 | |
| DL Nbr/ST | AKA | | | | Type | | | | | |
| | AZ | | | | | | | | | |

| Home Address | | | Home Phone |
|---|---|---|---|
| 3307 E. MEDLOCK DRIVE | PHOENIX, AZ 85018 | | 602-451-2727 |
| Business Address | | | Business Phone |

| Vehicle Yr | Make | Model | Color | Lic. Plate Nbr, ST | Type |
|---|---|---|---|---|---|
| Vehicle VIN | | | | | |

| SUMMONS | | Race | Sex | Age | DOB | | Ht | Wt | Hair | Eyes |
|---|---|---|---|---|---|---|---|---|---|---|
| WILLOUGHBY, SHAWN M | | White | M | 23 | ▓▓1979 | | 5 10 | 195 | Unk... | |
| DL Nbr/ST | AKA | | | | Type | | | | | |
| S51415257 | MA | | | | | | | | | |

| Home Address | | | Home Phone |
|---|---|---|---|
| 33 SUMMER STREET | TISBURY, MA 02568 | | 508-360-4824 |
| Business Address | | | Business Phone |

| Vehicle Yr | Make | Model | Color | Lic. Plate Nbr, ST | Type |
|---|---|---|---|---|---|
| Vehicle VIN | | | | | |

(No Property Records)

## Narrative

860 dispatched Edgartown Police and Rescue units to a report of a child who has been run over by a truck on Beach Road near the Triangle.  I responded to the North entrance of the Your Market parking lot, where I found Officer Ruley and a nurse tending to the injuries of a young boy.  The nurse was stabilizing the boy's head, and Officer Ruley and other citizens were applying pressure with a blanket to a deep gash on the boy's left thigh.  Sgt. Johnson and Officers Deroche and Labell arrived to assist, and EMS personal arrived with the ambulance a moment later.

| Reporting Officer | | Reviewed By |
|---|---|---|
| 115 CRAIG | Page 3 of 5 | Reviewed On |
| Reporting Officer's Signature | | |



**EDGARTOWN**
**POLICE DEPARTMENT**
**72 PEASE'S POINT WAY SOUTH**
**EDGARTOWN MA 02539-1118**
**508-627-4343 Fax 508-627-4577**
Complete Case Report

I then located and identified Shawn Willoughby as the driver of the vehicle, which had struck the boy. The truck was a Ford F550 flatbed owned by Willoughby's employer, Hinckley Lumber. At the time the truck was lightly loaded with lumber. Willoughby gave me the following account of events:

Willoughby was traveling outbound (North-West) on Beach road in heavy traffic. Oncoming traffic was equally congested. Willoughby said he saw a car exit the parking lot, and another enter it. An inbound car was stopped in traffic, allowing cars in and out of the lot. Willoughby said he saw some bikes heading outbound on the bike path adjacent to the roadway, but assumed that the bikes had seen the traffic driving through the intersection in front of them, so would stop before crossing it. Willoughby then decided to turn left, driving across the bike path and into the parking lot. As he crossed the bike path, he felt his truck driving over something, so stopped immediately. He then discovered that one of the bikes had not stopped, but had ridden under the rear wheels of the truck.

I asked Willoughby if he made certain that the bikes had stopped to allow him to turn off of the road and cross the bike path safely. He said that he did not see the bikes stop, but assumed that they would stop when they saw his truck crossing in front of them. I advised Willoughby that he is required to be certain that it is safe to cross the bike path; that it is not acceptable to simply assume that the bikes will stop when they see him turning in front of them. Willoughby kept repeating that he could not believe that the riders would not stop when they saw him.

From my discussion with Willoughby I determined that he had not exercised due caution when turning left, and had crossed the bike path knowing that bicyclists were on a course that would cause then to collide with his truck. He made the decision to turn based on his assumption that the bikes would stop when he drove in front of them. He was advised that he would be issued a citation at the conclusion of my investigation.

I then returned to the victim, identified as C██ Higgins. At this time witnesses advised me that the twin rear tires of the truck had driven over C██'s body. C██ was complaining of breathing problems and other pains. He was collared, placed on a backboard and transported to MV Hospital.

| Reporting Officer<br><br>115 CRAIG<br>Reporting Officer's Signature | Page 4 of 5 | Reviewed By<br><br>Reviewed On |
| --- | --- | --- |

**EDGARTOWN**
**POLICE DEPARTMENT**
**72 PEASE'S POINT WAY SOUTH**
**EDGARTOWN MA 02539-1118**
**508-627-4343 Fax 508-627-4577**
Complete Case Report

C⬛'s bike was recovered and taken to the police station.

I responded to the hospital and spoke with C⬛'s uncle, Michael Higgins. Michael said that he was riding alongside C⬛ on the bike path. Michael had his hand on C⬛'s bike, and was "towing" the bike along beside him. Michael said that they felt they were safe, as they were riding on the bike path. Michael saw the truck turn left right in front of him, and said that he stopped so quickly that he fell off of his own bicycle. He was unable to stop C⬛'s bike, which traveled forward and under the wheels of the truck. The wheels traveled over C⬛ and his bike. Once the truck stopped, Michael and other citizens pulled C⬛ out from under the truck. Michael said that he saw no other cars entering or exiting the parking lot, contrary to what Willoughby had told me. He said that the truck just turned left right in front of them, and that they had no time to stop.

C⬛ suffered serious internal injuries and was flown by helicopter to Children's hospital in Boston.

I then called witness Lorraine King, who told me that she had been driving the inbound car which had stopped to allow Willoughby to turn left into the parking lot. She saw no other care entering or leaving the parking lot in front of her. She said that she also saw the bikes coming up the bike path, and that it did not appear they were planning to stop, as there was nothing in front of them. The truck then made the left turn in front of the bikes, and King said she saw the truck move as if it was running over a speed bump.

Based on my investigation, I determined that Willoughby was negligent in his operation of the truck. He failed to yield to the bicycles on the bike path, and failed to use proper caution while turning. Citation K1392788 was issued as a criminal complaint.

| Reporting Officer | | Reviewed By |
|---|---|---|
| 115 CRAIG | Page 5 of 5 | |
| Reporting Officer's Signature | | Reviewed On |

| CRIMINAL COMPLAINT | 0235CR000823 | Trial Court of Massachusetts |
|---|---|---|
| | | Edgartown District Court |

**DEFENDANT**
WILLOUGHBY, SHAWN M JR
BOX 662
33 SUMMER ST, TISBURY, MA
OAK BLUFFS, MA 02557

TO ANY JUSTICE OR CLERK-MAGISTRATE
OF THE EDGARTOWN DISTRICT COURT

| DATE OF BIRTH | SEX | RACE | HEIGHT | WEIGHT | EYES | HAIR |
|---|---|---|---|---|---|---|
| ▬1979 | M | W | 5'10" | 199 | BRO | BRO |

| INCIDENT REPORT # | SOCIAL SECURITY # |
|---|---|
| | ▬▬▬▬ |

The undersigned complainant, on behalf of the Commonwealth, on oath complains that on the date and at the location stated herein the defendant did commit the offense(s) listed below.

| DATE OF OFFENSE | PLACE OF OFFENSE |
|---|---|
| 07/15/2002 | EDGARTOWN |

| COMPLAINANT | POLICE DEPARTMENT |
|---|---|
| , | EDGARTOWN PD |

| DATE OF COMPLAINT | RETURN DATE AND TIME |
|---|---|
| 08/06/2002 | 09/06/2002 8:30 AM |

**COUNT-OFFENSE**

1. 90/24/E  NEGLIGENT OPERATION OF MOTOR VEHICLE c90 §2

on 07/15/2002 did operate a motor vehicle upon a way, as defined in G.L. c.90, §1, or in a place to which the public has a right of access, or in a place to which members of the public have access as invitees or licensees, negligently, so that the lives or safety of the public might be endangered, in violation of G.L. c.90, §24(2)(a). (PENALTY: imprisonment for not less than 2 weeks, not more than 2 years; or not less than $20, not more than $200, plus $125 Head Injury Treatment Services Trust Fund surcharge; or both imprisonment and fine; subsequent offense may not be filed or continued without a finding except upon motion and judge's certificate that such is in the interests of justice; RMV may (and shall unless judge recommends otherwise) revoke license for 60 days or, for subsequent offenses within 3 years, for 1 year, subject to reinstatement after investigation; RMV may revoke registration if defendant is owner or has exclusive control of vehicle.)

**COUNT-OFFENSE**

2. 90/14/A  SLOW, FAIL TO * c90 §14

TE: THIS IS A CIVIL MV INFRACTION, SET FORTH HERE FOR PROCEDURAL PURPOSES ONLY. on 07/15/2002, while operating a motor vehicle: (1) upon approaching a cow, horse or other draft animal that was being led, ridden or driven and that appeared to befrightened, did fail to bring such vehicle immediately to a stop on the signal of the person in charge of such animal, and then to remain stationary until such animal had passed or to use reasonable caution in passing such animal; or (2) upon approaching or passing a person on a bicycle did fail to slow down and pass at a safe distance and at a reasonable and proper speed; or (3) upon approaching or passing a street railway car stopped to allow passengers to alight from or board the same, did drive within eight feet of the running board or lowest step of the car then in use by passengers to alight or board, not being expressly directed to do so by a traffic officer, and not being at a point where passengers were protected by a safety zone; or (4) upon approaching a pedestrian who was on the traveled part of the way, as defined in G.L. c.90, §1, and not on a sidewalk, did fail to slow down; or (5) on a way, as defined in G.L. c.90, §1, or on a curve or a corner of a way, where his or her view was obstructed, did fail to slow down and keep to the right; or (6) upon approaching a junction of a way, as defined in G.L. c.90, §1, with an intersecting way, did fail to slow down and keep to the right of the center line before entering such junction, in violation of G.L. c.90, §14. (CIVIL ASSESSMENT: 1st offense $20; $35, 2nd offense in 12 months. $75, 3rd offense in 12 months. $150.)

**COUNT-OFFENSE**

3. 89/8  YIELD AT INTERSECTION, FAIL * c89 §8

NOTE: THIS IS A CIVIL MV INFRACTION, SET FORTH HERE FOR PROCEDURAL PURPOSES ONLY. on 07/15/2002, while operating a motor vehicle on a way, as defined in G.L. c.90, §1: (1) when approaching or entering an intersection of ways from the left at approximately the same instant as another vehicle was approaching or entering such intersection from the right, did fail to yield the right-of-way to the vehicle on the right; or (2) when intending to turn left in an intersection across the path or lane of vehicles approaching from the opposite direction, did fail before turning to yield the right-of-way until such time as such left turn could be made with reasonable safety; or (3) when entering a rotary intersection, did fail to yield the right-of-way to a vehicle or vehicles already in the intersection; or (4) at an intersection of ways in which vehicular traffic was facing a steady red indication in a traffic control signal, did make a right turn, or a left turn from a one-way street to another one-way street, without having stopped in obedience to such red signal at the entrance to the crosswalk on the near side of the intersection or, if none, then at the entrance to the intersection, or without having yielded the right-of-way to pedestrians and other traffic proceeding as directed by the signal at such intersection, or contrary to a prohibition against such turn of which a sign erected at such intersection gave notice, in violation of G.L. c.89, §8. (CIVIL ASSESSMENT: $35.)

**COUNT-OFFENSE**

A True Copy Attest

*JH Williamson*

Clerk Magistrate

| LAINANT | SWORN TO BEFORE CLERK-MAGISTRATE | ON (DATE) | TOTAL COUNTS |
|---|---|---|---|
| X *Neith Sparks* | X *Jhon A. Ellis* | 8-7-02 | 3 |

| FIRST JUSTICE | COURT ADDRESS | Edgartown District Court |
|---|---|---|
| Hon. BRIAN ROWE | | 81 Main Street |

| TRUE CLERK-MAGISTRATE/ASST. CLERK | ON (DATE) | P.O. Box 1284 |
|---|---|---|
| COPY X | | Edgartown, MA 02539 |

| CRIMINAL DOCKET | DOCKET NO. 0235CR000823 | ATTORNEY NAME | |
|---|---|---|---|

| COURT DIVISION: Edgartown | ☐ INTERPRETER REQUIRED | DATE and JUDGE | DOCKET ENTRY |
|---|---|---|---|

**NAME, ADDRESS AND ZIP CODE OF DEFENDANT**
WILLOUGHBY, SHAWN M JR
BOX 662
33 SUMMER ST, TISBURY, MA
OAK BLUFFS, MA 02557

Attorney appointed (SJC R. 3:10)
☐ Atty denied and Deft Advised per 211D §2/
☐ Waiver of counsel found after colloquy

**DEFT, DOB AND SEX**   /1979   M

Terms of release set:
☐ PR   ☑ Bail: 100.—
☐ Held (276 §58A)
☐ See back for special conditions

| DATE OF OFFENSE(S): 07/15/2002 | PLACE OF OFFENSE(S): EDGARTOWN |
|---|---|

Arraigned and advised:
☐ Potential of bail revocation (276 §58)
☐ Right to bail review (276 §58)
☐ Right to drug exam (111E §10)

| COMPLAINANT: , | POLICE DEPARTMENT (if applicable): EDGARTOWN PD |
|---|---|

12-503
Julian

Advised of right to jury trial:
☐ Does not waive
☑ Waiver of jury trial found after colloquy

| DATE OF COMPLAINT: 08/06/2002 | RETURN DATE AND TIME: 09/06/2002 08:30:00 |
|---|---|

Advised of trial rights as pro se (Supp. R. 4)
Advised of right of appeal to Appeals Ct (R. 28)

---

**COUNT/OFFENSE**
1. 90/24/E NEGLIGENT OPERATION OF MOTOR VEHICLE c9

| FINE | SURFINE | COSTS | RESTITUTION 125 HF | V/W ASSESSMENT 50 ☐ WAIVED |
|---|---|---|---|---|

DISPOSITION DATE and JUDGE: 12-503  Julian

**SENTENCE OR OTHER DISPOSITION**
☐ Sufficient facts found but continued without guilty finding until:
☑ Probation 11-30-05  ☐ Pretrial Probation (276 §87) - until:
☐ To be dismissed upon payment of court costs/restitution
☐ Dismissed upon: ☐ Request of Comm. ☐ Request of Victim
☐ Request of Deft ☐ Failure to prosecute ☐ Other: See 3-4-04
☐ Filed with Deft's consent ☐ Nolle Prosequi ☐ Decriminalized (277 §70C)

– Level 3 Prob w/bracelet
– 6 Sm CPSF 2 years

**DISPOSITION METHOD**
☑ Guilty Plea or Admission to Sufficient Facts accepted after colloquy and 276 §29D warning
☐ Bench Trial
☐ Jury Trial
☐ None of the Above

**FINDING**
☐ Not Guilty
☐ Guilty
☑ Not Responsible
☐ Responsible
☐ No Probable Cause
☐ Probable Cause

**FINAL DISPOSITION**
☐ Dismissed on recommendation of Probation Dept.
☐ Probation terminated: defendant discharged

| JUDGE | DATE |
|---|---|

---

**COUNT/OFFENSE**
2. 90/14/A SLOW, FAIL TO * c90 §14

| FINE | SURFINE | COSTS | RESTITUTION | V/W ASSESSMENT ☐ WAIVED |
|---|---|---|---|---|

DISPOSITION DATE and JUDGE: 12-503  Julian

**SENTENCE OR OTHER DISPOSITION**
☐ Sufficient facts found but continued without guilty finding until:
☐ Probation  ☐ Pretrial Probation (276 §87) - until:
☐ To be dismissed upon payment of court costs/restitution
☐ Dismissed upon: ☐ Request of Comm. ☐ Request of Victim
☐ Request of Deft ☐ Failure to prosecute ☐ Other:
☐ Filed with Deft's consent ☐ Nolle Prosequi ☐ Decriminalized (277 §70C)

**DISPOSITION METHOD**
☐ Guilty Plea or Admission to Sufficient Facts accepted after colloquy and 278 §29D warning
☐ Bench Trial
☐ Jury Trial
☐ None of the Above

**FINDING**
☐ Not Guilty
☐ Guilty
☑ Not Responsible
☐ Responsible
☐ No Probable Cause
☐ Probable Cause

**FINAL DISPOSITION**
☐ Dismissed on recommendation of Probation Dept.
☐ Probation terminated: defendant discharged

| JUDGE | DATE |
|---|---|

---

**COUNT/OFFENSE**
3. 89/8 YIELD AT INTERSECTION, FAIL * c89 §8

| FINE | SURFINE | COSTS | RESTITUTION | V/W ASSESSMENT ☐ WAIVED |
|---|---|---|---|---|

DISPOSITION DATE and JUDGE: 12-503  Julian

**SENTENCE OR OTHER DISPOSITION**
☐ Sufficient facts found but continued without guilty finding until:
☐ Probation  ☐ Pretrial Probation (276 §87) - until:
☐ To be dismissed upon payment of court costs/restitution
☐ Dismissed upon: ☐ Request of Comm. ☐ Request of Victim
☐ Request of Deft ☐ Failure to prosecute ☐ Other:
☐ Filed with Deft's consent ☐ Nolle Prosequi ☐ Decriminalized (277 §70C)

**DISPOSITION METHOD**
☐ Guilty Plea or Admission to Sufficient Facts accepted after colloquy and 278 §29D warning
☐ Bench Trial
☐ Jury Trial
☐ None of the Above

**FINDING**
☐ Not Guilty
☐ Guilty
☑ Not Responsible
☐ Responsible
☐ No Probable Cause
☐ Probable Cause

**FINAL DISPOSITION**
☐ Dismissed on recommendation of Probation Dept.
☐ Probation terminated: defendant discharged

| JUDGE | DATE |
|---|---|

---

**COUNT/OFFENSE**

| FINE | SURFINE | COSTS | RESTITUTION | V/W ASSESSMENT ☐ WAIVED |
|---|---|---|---|---|

DISPOSITION DATE and JUDGE

**SENTENCE OR OTHER DISPOSITION**
☐ Sufficient facts found but continued without guilty finding until:   A True Copy Attest
☐ Probation  ☐ Pretrial Probation (276 §87) - until:
☐ To be dismissed upon payment of court costs/restitution
☐ Dismissed upon: ☐ Request of Comm. ☐ Request of Victim
☐ Request of Deft ☐ Failure to prosecute ☐ Other:  Clerk/ Magistrate
☐ Filed with Deft's consent ☐ Nolle Prosequi ☐ Decriminalized (277 §70C)

**DISPOSITION METHOD**
☐ Guilty Plea or Admission to Sufficient Facts accepted after colloquy and 278 §29D warning
☐ Bench Trial
☐ Jury Trial
☐ None of the Above

**FINDING**
☐ Not Guilty
☐ Guilty
☐ Not Responsible
☐ Responsible
☐ No Probable Cause
☐ Probable Cause

**FINAL DISPOSITION**
☐ Dismissed on recommendation of Probation Dept.
☐ Probation terminated: defendant discharged

| JUDGE | DATE |
|---|---|

ADDITIONAL COUNTS ATTACHED

A TRUE COPY ATTEST: X _____ CLERK-MAGISTRATE/ASST. CLERK   ON (DATE)

**COURT ADDRESS**
Edgartown District Court
81 Main Street
P.O. Box 1284 Edgartown, MA 02539

DOCKET NUMBER: **0235CR000823**    NAME: **WILLOUGHBY, SHAWN M JR**

### SCHEDULING HISTORY

| NO. | SCHEDULED DATE | SCHEDULED EVENT | RESULT | | JUDGE | TAPE NO. | START | STOP |
|---|---|---|---|---|---|---|---|---|
| 1 | 10/25/02 | PT | ☐ Held  ☐ Cont'd | | | | | |
| 2 | 11-15-02 | PT | ☐ Held  ☐ Cont'd | | | | | |
| 3 | 12.16.02 | PT | ☐ Held  ☐ Cont'd | | | | | |
| 4 | 1-30-3 | PT | ☐ Held  ☐ Cont'd | | | | | |
| 5 | 2.24.03 | PT | ☐ Held  ☐ Cont'd  WARD | | | | | |
| 6 | 3.3-03 | PT | ☐ Held  ☐ Cont'd | | | | | |
| 7 | 3-6-03 | PT | ☐ Held  ☐ Cont'd | | | | | |
| 8 | 3.10.03 | 9²ⁿ DEF | ☐ Held  ☐ Cont'd  Def appears late. WR. $100. m/pstd on 38. | | | | | |
| 9 | 4.3-03 | PT H | ☐ Held  ☐ Cont'd | | | | | |
| 10 | 5-1-03 | PT | ☐ Held  ☐ Cont'd  jury req filed | | | | | |

ARR=Arraignment  PT=Pretrial hearing  CE=Discovery compliance and jury election  T=Bench trial  JT=Jury Trial  PC=Probable cause hearing  M=Motion hearing  SR=Status review
SRP=Status review of payments  FA=First appearance in jury session  S=Sentencing  CW=Continuance-without-finding scheduled to terminate  P=Probation scheduled to terminate
DFTA=Defendant failed to appear and was defaulted  WAR=Warrant issued  WARD=Default warrant issued  WR=Warrant or default warrant recalled  PR=Probation revocation hearing

| ENTRY DATE | OTHER DOCKET ENTRIES |
|---|---|
| OCT 25 2002 | WARD |
| 2.28.03 – | Def surrenders to court, WR, Cont 3.3.03 PT |
| MAR 06 2003 | WARD. |
| 5.22.03 – | WARD 11:30 am. Macy, J. |
| .23-03 | Def surrenders. WR. Cont 6.2.03 JC |
| 6/2/63 | Def, absent |
| 7.24.03 | Def in court, arrested on warrant. WR. Cont 8.28.03 |
| 8-28-03 PT | – WARD |
| 9-2-03 – | Def in court, arrested on war WR |
| 9-5.03 DT | → |

### ADDITIONAL ASSESSMENTS IMPOSED OR WAIVED

| DATE IMPOSED and JUDGE | TYPE OF ASSESSMENT | AMOUNT | DUE DATES and COMMENTS | ✓WAIVED |
|---|---|---|---|---|
| 10.25.02 Lowe | Legal Counsel Fee (211D §2A ¶2) | 150.— | | |
| 2.19.04 Lowe | Legal Counsel Contribution (211D §2) | | cps.losh | X |
| | Court Costs (280 §6) | | | |
| | Drug Analysis Fee (280 §6B) | | A True Copy Attest | |
| | OUI §24D Fee (90 §24D ¶9) | | Williamson | |
| | OUI Head Injury Surfine (90 §24[1][a][1]¶2) | | Clerk Magistrate | |
| | Probation Supervision Fee (276 §87A) | | | |
| FEB 06 2003 | Default Warrant Assessment Fee (276 §30 ¶2) | 75.— | | |
| | Default Warrant Removal Fee (276 §30 ¶1) | | | |

0235 CR 0823     Shaun Willoughby

9-12-03 PT — Motion for Mandatory Discovery filed Atty Hanley     Allowed, Rowe J

11-20-03 JC

12-5-03 $T

12-4-04-SF —

12-11-03 —     Motion to Revise + Revoke filed, Atty Morano

2-19-04 — Case adv req of Prob. Atty Nash appt to rep def. Admits VOP. Waives detention hearing. Held w/o bail to 3-12-04 for SH. Rowe, J.  Fee waived for CPCS appt.

2-27-04 — Request for habe filed, Atty Nash. No action taken. Marked for 3-1-04. Julian, J.

3-1-04 — No action taken on above request for habe, Rowe, J

3-12-04: Rowe, J. finds defendant in violation. Def. to serve balance of sentence, 2 years, in HOC. All remaining monies owed, Remitted, Rowe, J.

**CHILDREN'S HOSPITAL**
**PATIENT CARE COORDINATION CENTER**

## DISCHARGE PLAN

2215991
WIGGINS, C
N
602-451-2727

ADMISSION DATE  7·15·02
DISCHARGE DATE  7·19·02
ATTENDING PHYSICIAN  Dr. Mooney
RESIDENT PHYSICIAN  Dr. Ghant u
PRIMARY NURSE _____
OTHER SERVICES  orthopedics
Physical therapy

s/p fall from bike + truck to abdomen

DISCHARGE DIAGNOSES
(primary) Grade 3 liver laceration duodenal
(secondary) + pancreatic hematoma, (L) knee
(tertiary) laceration (L) pubic ramus fx
(L) femur hairline fracture

DISCHARGE TO HOME ✓  OTHER _____
DIET  Regular

ACTIVITY LEVEL weightbear as tol with crutches
RETURN TO SCHOOL ON as scheduled

(see page _____ 2 or _____ page 3 for additional information)

TREATMENT                                                    TIME OR FREQUENCY
Refer to liver laceration teaching sheet. Notify MD for any
new onset or worsening abdominal pain. Notify MD for any
persistant muscle/vomiting or bloody stool.
(see page _____ 2 or _____ page 3 for additional information) Quiet activity for 6 wks.
Keep (L) knee wound clean

MEDICATIONS (List all current)

| name of drug | dose | time | special instructions |
|---|---|---|---|
| Tylenol as needed for pain | | | |
| | | | |
| | | | |
| | | | |
| | | | |

(see page _____ 2 or _____ page 3 for additional information)
(prescriptions given to patient/parents)

David
Dr. Mooney (617) 355-6359

**COMMUNITY PROVIDERS**

agency name & address _____
_____
_____

contact person _____
telephone _____ start date _____
service/frequency requested _____

agency name & address _____
_____
_____

contact person _____
telephone _____ start date _____
service/frequency requested _____

**FOLLOW UP MEDICAL/CLINIC APPOINTMENTS**

1. Clinic  Primary care physician
   Date  as scheduled previously
   Contact person  suture removal.  RN/MD
   tel # _____

2. Clinic _____
   Date _____
   Contact person _____ RN/MD
   tel # _____

_____ Check if page 2 is attached.

I ACKNOWLEDGE MY PARTICIPATION IN, REVIEW OF AND AGREEMENT WITH THE ABOVE PLAN. I HAVE RECEIVED A WRITTEN COPY, MY QUESTIONS HAVE BEEN ANSWERED, AND I UNDERSTAND THE CONTENTS. I UNDERSTAND THAT, IN ORDER TO ARRANGE NECESSARY SERVICES, RELEVANT MEDICAL AND OTHER INFORMATION IS BEING RELEASED TO THE ABOVE-LISTED PROVIDERS.

10NW
(617) 355-2400

X _____                    _____
(signature of patient/parent/legal guardian)    (date)        Rosella Harvorn RN    (tel #)    (date)
                                                (signature of discharging nurse)

                                                _____
                                                (signature of preparing nurse)

If patient/parent/legal guardian does not sign above, state
reasons for not signing, including any objections to the
plan: _____

CHILDREN'S HOSPITAL · 300 LONGWOOD AVENUE · BOSTON, MA 02115

187 280/PKG